UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SYNOPSYS, INC., et al.,<br><br>        Plaintiffs,<br><br>vs.<br><br>TRINITY SOFTWARE & BEYOND, LTD.,<br><br>        Defendant | Civ. A. No. 1:19-cv-11668-PBS |

## **MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

### PRELIMINARY STATEMENT

Trinity Software is a small Israeli software company that acts as a "value-added reseller" of open-source software. It did business with Black Duck, a software company, acting as a reseller and eventually an exclusive reseller for Black Duck software in Israel. While Black Duck is a Massachusetts company, Trinity's contacts were almost exclusively with Black Duck's staff in Europe. After Synopsys, a large public company, acquired Black Duck, Trinity continued to do business with Black Duck for a time, but in the end, Black Duck terminated the relationship. Trinity, which does business only in Israel and which (as we show below) had very limited dealings with Massachusetts, sued Synopsys in Israel, asserting, in general terms, that Synopsys had induced Trinity to continue doing work for Black Duck by representing, falsely as it turned out, that Black Duck was going to continue to do business with Trinity in Israel after the acquisition. Now Synopsys and Black Duck have sued to stop the suit in Israel, pointing to a jurisdictional waiver clause to which Synopsys was not even a party and which, as we show, does not allow the claims Trinity has raised against Synopsys in Israel to be litigated here.

In this motion, Trinity seeks dismissal for lack of personal jurisdiction. There is no real connection between Trinity's relevant actions and Massachusetts. The forum selection clause can have no effect with respect to claims against Synopsys—which are the only claims Trinity has brought in Israel—and the language of the clause does not even constitute a waiver of personal jurisdiction as to claims brought by Black Duck against Trinity. And with the waiver clause to the side, it is clear that Trinity has not transacted business in the Commonwealth and is not within this Court's personal jurisdiction.

## FACTS

A.    The Parties.

Trinity Software & Beyond, Ltd. is a small Israeli software company. (Shaft Decl. ¶ 2). Its main business is "value-added reselling": Trinity sells software to Israeli buyers on behalf of its clients, and it also provides implementation, integration, support, and training services to the purchasers. *Id*. The company was founded in 2008. It employs only two people, who each work out of a home office in Israel. Its mailing address is Raanana, Israel. (*Id.* ¶ 3).

Synopsys is a large, publicly-traded company based in Mountain View, California. Its best-known business is providing EDA (electronic design automation) software, which engineers use to design and test computer chips. It also provides software to improve the security and quality of computer code. In the most recent quarter reported, Synopsys had net income of $99 million on revenue of $852 million. (Lindberg Decl. Ex. 1).

Black Duck Software, Inc., was founded in 2003 and headquartered in Burlington, Mass. It produces software that automates the process of managing open-source software. Over the years it had several rounds of venture capital funding, until 2017 when it was acquired by Synopsys for more than $500 million in cash. (*Id.*, Ex. 2).

B.     The Relationship.

Trinity has been a value-added reseller for Black Duck software in Israel since December 2016. (Shaft Decl. ¶ 4). At the start of the relationship, Black Duck already had two other resellers in Israel, but the new relationship with Trinity was successful enough that Black Duck soon told Trinity that it would stop doing business with the other two resellers and work exclusively with Trinity in the country. (*Id.*). In an e-mail on February 28, 2017, Black Duck confirmed these terminations to Trinity and indicated that it would work exclusively with Trinity in Israel. (*Id.*). In May 2017, the parties entered into the contract entitled "International Reseller Agreement."[1] The contract was a Black Duck form contract, although the business terms attached as an exhibit were negotiated. While Black Duck's headquarters are and were in Massachusetts, the negotiation of the contract took place primarily between Carmit Tsur and Rami Shaft, two Trinity executives, in Israel, and Kevin Bland and Damian Saunders, who both worked at a Black Duck office in Europe. (*Id.* ¶ 5). Trinity did not negotiate the contract with Black Duck representatives in Massachusetts, although it appears that Black Duck chose to have the contract signed by an officer who works in the Massachusetts home office. (*Id.*). At the time of the contracting, no one told Trinity that Synopsys had any interest in the contract. (*Id.* ¶ 6). Trinity first heard of Synopsys's interest in Black Duck months later when Synopsys announced its acquisition of Black Duck.

After the contract was executed, Trinity continued to provide value-added reseller services to Black Duck. Trinity did all of its work in Israel. It sold software and provided support and other services only to Israeli customers. It worked exclusively (with an exception noted

---

[1] The parties had a written contract from the 2016 inception of their relationship, but the integration clause in the International Reseller Agreement states that it "supersedes all previous agreements with respect to the subject matter hereof." (IRA ¶ 14.10). So the 2016 contract is inoperative and has no bearing on the case.

below) with Black Duck representatives in Europe on technical support, sales engineering, sales management, sales operations, and channel management, and for discussions about purchase orders from end users. (Shaft Decl. ¶¶ 7, 10). Representatives of Black Duck, including the CEO, Lou Shipley, visited Trinity in Israel on occasion during the course of performance, though Trinity's personnel never made the trip to Massachusetts. (*Id.* ¶ 8). Of course, Trinity had *some* direct or indirect contact with Massachusetts during the course of performance, as Massachusetts was where Black Duck's main offices were located. For example, in a few cases Black Duck's European support and engineering team, which was Trinity's main point of contact, was unavailable to answer a pressing question, and in those cases, Trinity would be referred to Black Duck representatives in Massachusetts. (*Id.* ¶ 10). In some cases, Black Duck's legal staff negotiated directly with customers in Israel over the terms of the end-user license agreement for the software to be licensed, although in those case it was the customer, not Trinity itself, that had the contact with Massachusetts. (*Id.* ¶ 11). And Trinity's personnel had occasional calls and emails with Black Duck representatives in Boston, including Reena Nijhar, who managed partner marketing for EMEA, and Matt Jacobs, who managed end-user negotiations. (*Id.* ¶ 12). The sparse communications with Massachusetts have nothing to do with the claims Synopsys and Black Duck are asserting, as Trinity demonstrates below.

In 2017, after the execution of the International Reseller Agreement, Synopsys acquired Black Duck. (Lindberg Decl. Ex. 3). The acquisition was a cash transaction, and Black Duck retained its separate corporate existence. The transaction was cause for concern at Trinity, which feared—correctly as it turned out—that Synopsys would cause Black Duck to stop doing business with value-added resellers in Israel and would instead sell directly to customers in the country. But through its conduct and representations, Synopsys caused Trinity to believe, with

reason, that Black Duck was going to do business with Trinity in Israel going forward. Specifically, Synopsys representatives, in particular Moshe Marziano in Israel and Andy Didcott in Europe, consistently represented to Trinity that a partnership agreement would be forthcoming. (Shaft Decl. ¶ 17). In May 2018, Synopsys further required Trinity to execute compliance amendments to the Black Duck partner agreement, again assuring Trinity that upon expiration and renewal, the partnership agreement would be executed. (*Id.* ¶ 18). Communications regarding this lengthy and costly process, between February 2018 (the first compliance request) through September, 2018, were always with representatives in Europe and Israel.[3] *Id*. In addition, Synopsys continued to send Trinity client leads in view of the anticipated continued collaboration. (Shaft Decl. ¶ 19). Relying on these assurances, Trinity invested great efforts in a 2019 marketing plan, and continued to pursue customers for Black Duck software in Israel, proceeding full force with its marketing and negotiating efforts. (*Id.* ¶ 21). These efforts resulted in several draft contracts in place, including with Core Photonics, Amdocs and Cyber-Ark, but those contracts never closed because of Synopsys's decision to back out of the anticipated partnership. As a result, Trinity did not earn commissions on these nearly-closed deals. This conduct, and those representations, by the way, were words and actions that Synopsys directed into Israel, not conduct that anyone directed at Massachusetts.

## ARGUMENT

A.  <u>The Court Lacks Personal Jurisdiction.</u>

Synopsys and Black Duck cannot show that Trinity is subject to this Court's jurisdiction. The jurisdictional waiver clause in the International Reseller Agreement, which is enforceable

---

[3] Not only was there no direct contact with Synopsys in the United States, but Synopsys clearly intended that future contacts would be via Synopsys representatives in Europe. For example, in an email dated October 9, 2018, Andy Didcott informed Trinity representatives that because two European-based Synopsys representatives would be moving back to the U.S., he appointed a new European-based Synopsys contact to work with Trinity. (Shaft Decl. ¶ 20).

5

only by Black Duck, must be narrowly interpreted and does not extend to Trinity's claims in the Israel. Aside from Trinity's purported waiver, Synopsys and Black Duck fail to satisfy their jurisdictional burden under the long-arm statute and the Due Process Clause.

    1.    <u>The Waiver Language In The Contract Does Not Control.</u>

"A party to a contract may waive its right to challenge personal jurisdiction by consenting to personal jurisdiction in a forum selection clause." *Inso Corp. v. Dekotec Handelsges mbH*, 999 F. Supp. 165, 166 (D. Mass. 1998) (citing *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 11 (1972)). No doubt Synopsys and Black Duck will say that the language in Section 14.3 of the International Reseller Agreement—"Reseller consents to the jurisdiction of [Boston] courts by execution of this Agreement" for disputes "arising out of or in connection with" the contract—is simply dispositive. Not so, for two reasons. First, Synopsys was not a party to the International Reseller Agreement. Second, the potential waiver of the jurisdictional defense is not as broad as Synopsys and Black Duck think.

    a.    <u>Synopsys Is Not A Party To The Contract.</u>

First, the International Reseller Agreement is a contract between Black Duck and Trinity. Synopsys is not a party to it.[4] Even reading the agreement as Synopsys and Black Duck wish to read it, Trinity's bargain was only with Black Duck, and if there is a waiver, Synopsys has no standing to enforce it. Synopsys cannot possibly be a third-party beneficiary of the International Reseller Agreement because it had not yet acquired Black Duck at the time of the contract and

---

[4] Synopsys may argue that it is a party to the First Amendment to the International Reseller Agreement, because that amendment, though executed by Black Duck and naming only Black Duck, states that it is an agreement with Black Duck and its "Affiliates." (ECF 1, Ex. A at 51). "Affiliates" is capitalized but is not defined, either in the amendment or in the International Reseller Agreement itself. Even assuming *arguendo* that Synopsys counts as an "affiliate" in these circumstances—surely if the parties wished to make Synopsys a party to the amendment they would simply have said so—the amendment does not make the entire International Reseller Agreement and all its provisions applicable to Synopsys. Synopsys had no duties under that Agreement and at most acquired the rights of an intended beneficiary of the contract *with respect to the matters addressed in the amendment,* which are not at issue in this case.

neither Synopsys nor Black Duck made Trinity aware that Synopsys had any interest in the contract at the time of contracting. (Shaft Decl. ¶ 6). *See Spinner v. Nutt*, 417 Mass. 549, 555 (1994) (the promisee must "intend[] to give the [third-party] beneficiary the benefit of the promised performance"). So even if Black Duck could hale Trinity into a Massachusetts court on a waiver theory, Synopsys, which is a plaintiff here but is not a party to the contract and not a beneficiary of the waiver, cannot.[5] And since personal jurisdiction must exist as to each claim, *see Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999); 4A Wright & Miller § 1069.7 (4th ed.) ("a plaintiff also must secure personal jurisdiction over a defendant with respect to each claim she asserts"), Synopsys's jurisdictional argument must fail even if Black Duck could show a waiver.[6] While in *PREP Tours, Inc. v. American Youth Soccer Org.*, 913 F.3d 11, 21 n.6 (1st Cir. 2019), the court held that the claim-by-claim approach might not apply when the claims arise out of the same forum contacts, that reasoning cannot work here, since Trinity never did business with Synopsys. Synopsys's only cause for complaint is that Trinity sued it in Israel.

        b. The Clause Is Not A Broad "Arising Out Of Or Relating To" Clause, But Rather A Narrower "Arising" Clause.

---

[5] The contract also contains choice-of-forum language. If the question were whether Synopsys can enforce the choice-of-forum provisions of the contract, the answer is clearly no, because it is not a third-party beneficiary. *See BBJ, Inc. v. MillerCoors, LLC*, 2015 WL 247977, at *3 (D. Mass. Jan. 20, 2015) (nonparty could not enforce clause even when "closely related" to a party); *Pixel Enhancement Labs., Inc. v. McGee*, 1998 WL 518187, at *2 (D. Mass. Aug. 5, 1998) ("As McGee is not a third party beneficiary of the License Agreement, he has no standing to assert its forum selection clause"). Even in cases like *Europa Eye Wear Corp. v. Kaizen Advisors, LLC*, 2019 WL 2992336 (D. Mass. Jul. 9, 2019), which holds that a forum selection clause is enforceable against a nonparty, the outcome is dependent on whether it was "reasonably foreseeable that [the nonparty] will be bound," *id.* at *2, and there is no way Trinity could have foreseen Synopsys's interest at the time of the contract. But the choice of forum clause is not at issue on this motion: all that is at issue is Synopsys's and Black Duck's right to hale Trinity into court here in order to litigate the issue they want to raise about the effect of the choice of forum clause on the Israeli litigation.

[6] The difficult issue of pendent personal jurisdiction, which arises when a plaintiff sues on a federal claim as to which a plaintiff may make nationwide service of process and also brings claims under state law governed by the ordinary territorial limits of process, *see generally* 4A Wright & Miller § 1069.7 (4th ed.), does not arise here; all of the claims arise under state law. *See Langone v. Son, Inc.*, 2015 WL 3744419, at *6 (D. Mass. Jun. 15, 2015) (pendent personal jurisdiction exists only when at least one of the claims arises under federal law).

Second, the language of the clause does not reach as far as Synopsys and Black Duck need it to reach. Ordinarily, in a choice of forum clause or an agreement to arbitrate, the parties agree to a forum for disputes "arising out of or relating to" the contract. Courts construe such language as two-pronged: [1] "arising out of" or [2] "relating to". And they hold that "arising out of" is narrower than "relating to." *See Chebotnikov v. LimoLink, Inc.,* 150 F. Supp. 3d 128, 131 (D. Mass. 2015) (citing *Huffington v. T.C. Grp., LLC*, 637 F.3d 18, 22 (1st Cir. 2011)).

Here, the language is different in a crucial respect. The parties did not include disputes "arising out of or relating to" the contract, or even disputes "arising out of or *connected* to" the contract. Instead, they included disputes "arising *out of or in connection with*" the contract. Note the difference between "in connection with" and "connected to." "Connected to" can be an independent phrase (disputes "connected to" a contract), but "in connection with" is clearly subordinate to what precedes it, here the word "arising." It would be strained and unnatural to write a clause covering "disputes in connection with" the contract: if that is what the parties meant they would simply have covered disputes "connected to" the contract. Thus we know that "in connection with" cannot be read as an independent, broader category of cases covered by the clause, parallel to cases "arising out of" the contract. The natural construction of the entire phrase is "arising [1] out of or [2] in connection with," not "[1] arising out of or [2] in connection with." And to the extent there is any ambiguity here, Black Duck's non-negotiable boilerplate, for that is what the clause is, should be construed against Black Duck. *See DaSilva v. Border Transfer of MA, Inc.*, 377 F. Supp. 3d 74, 91 (D. Mass. 2019).

Thus the clause should be construed narrowly. *See Chebotnikov,* 150 F. Supp. 3d at 131 (construing a forum selection clause with an "arising under" clause but no "related to" clause "narrowly"). It may well be that a clause covering all claims "arising out of or related to" a

contract, or even "arising out of or connected to" a contract, would cover tort claims such as the claims that are the focus of the Israeli lawsuit. But that is not what Black Duck and Trinity agreed here.

      c.   <u>The Israeli Claims Are Not Within The Scope Of The Waiver.</u>

The claims Trinity has brought in Israel do not arise from or in connection with the contract, even if they might be "related to" or even "connected to" it. In Israel, Trinity has brought claims only against Synopsys, which was not even a party to the International Reseller Agreement. The claim in Israel is has several parts:

(1) Synopsys, by its conduct and representations in the period around and after the expiration of the International Reseller Agreement, encouraged Trinity to continue to spend time and money promoting Synopsys products in Israel. (Isr. Compl. ¶¶ 41-45).[8] We would characterize this claim as a claim for breach of implied contract. Note that Trinity is claiming a contract *with Synopsys,* not with Black Duck.

(2) Synopsys intended to cause Black Duck to terminate the contract with Trinity but nevertheless caused Black Duck to "drag its feet" and to delay the closing of transactions beyond the termination date so as to deprive Trinity unjustly of its commission. (Isr. Compl. ¶¶ 46-49). This is akin to a claim for unjust enrichment or breach of the implied covenant of good faith and fair dealing (the contract, in this case, being the implied contract noted above, since that is the only contract that existed between Synopsys and Trinity).[9]

---

[8] An English translation of the complaint is attached as Exhibit B to the Complaint (ECF 1). Trinity believes that the translation is not perfectly accurate in all respects, but the basic nature of the counts is clear from the translation.
[9] Trinity brought a separate claim for unjust enrichment, too. (Isr. Compl. ¶¶ 67-73). Trinity also brought a claim for loss of reputation (*Id.* ¶¶ 74-79), though in American law perhaps that loss would be better characterized as an element of the damages rather than as a claim for relief.

>(3) Synopsys induced Trinity, through its conduct and promises, to expect, reasonably, that it would continue to do business with Synopsys or Black Duck, and as a result, Trinity lost expected profits and other opportunities and spent money intended to aid its work with Synopsys and Black Duck that it would not otherwise have spent. (*Id.* ¶¶ 53-66). This is akin to a claim for estoppel.

None of these claims arise out of the International Reseller Agreement. All of them could be asserted even if there had been no International Reseller Agreement at all, or even if the International Reseller Agreement had for some reason been void ab initio. True, all of the claims *relate to* the International Reseller Agreement, in the sense that the Agreement is part of the story that led up to the claims. But that is the difference between claims "*arising* out of or in connection with" the contract and claims that merely are "related to" to the contract.

    2.    <u>Trinity Has Not Transacted Business In Massachusetts.</u>

Leaving aside the supposed waiver, the remaining bases for the claim of personal jurisdiction are weak and must fail. This Court can exercise jurisdiction over Trinity only if Trinity would be subject to the jurisdiction of a Massachusetts court of general jurisdiction. Fed. R. Civ. P. 4(k)(1)(A). To meet their burden to show jurisdiction, Synopsys and Black Duck must show that the requirements of the long-arm statute and the requirements of the Due Process Clause are satisfied.[10] *See Cossart v. United Excel Corp.,* 804 F.3d 13, 18 (1st Cir. 2015). As the Complaint recognizes (¶ 8), the only arguable basis for jurisdiction in the long-arm statute is G.L. c. 223A, § 3(a), which permits a court to exercise personal jurisdiction "as to a cause of

---

[10] "[The First Circuit] has sometimes treated the limits of Massachusetts's long-arm statute as coextensive with those of the Due Process Clause." *Copia Comms, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016). "Recently, however, [the Court has] suggested that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution." *Id*. (internal citations omitted). Here, we show that Synopsys and Black Duck cannot carry their burden under either the long-arm statute or the Due Process Clause.

action . . . arising from the person's transacting any business in this Commonwealth." The focus, in deciding whether a defendant transacted business here, is "whether the defendant attempted to participate in the [C]ommonwealth's economic life." *Cossart,* 804 F.3d at 18. And the Court must also ask whether the claim arises from the transaction of business, i.e., "whether the transacted business was a 'but for' cause of the harm alleged in the claim." *Id.* Black Duck and Synopsys have the burden to prove the claims arise out of Trinity's transaction of business in the Commonwealth. *See Merced v. JLG Indus., Inc.*,170 F. Supp. 2d 65, 74 (D. Mass. 2001).

None of Trinity's conduct in Massachusetts could even possibly be a "but for" cause of the harm Synopsys and Black Duck allege in their complaint. Synopsys and Black Duck tacitly concede as much when they allege in their Complaint (¶ 9) that "the alleged events giving rise to the complaint did not occur within any judicial district of the United States." Trinity's operations are in Israel, and its business is selling software to customers in Israel.

The claims for damages here are: (1) that Trinity breached its obligation under the contract not to "promote, offer or distribute" a competing product by selling a product developed by Kiuwan, alleged to be a competitor of Black Duck (Compl. ¶ 28); (2) that Trinity breached the contract by "improperly inflating the retail prices of Black Duck products in Israel" and by "failing to report details about their sales practices to Black Duck" (*Id.* ¶ 29); (3) that Trinity breached the contract by filing a lawsuit in Israel (*Id.* ¶ 30). Synopsys and Black Duck also seek declaratory relief aimed at showing that they are not liable on the claims Trinity brought in Israel, either on the merits (*Id.* ¶¶ 34- 44, 51-56) or because the Israeli lawsuit is barred by the forum selection clause (*Id.* ¶¶ 45- 50). But nothing Trinity did or did not do in Massachusetts is a cause, let alone a but-for cause, of any of the alleged conduct that has led to the claims here. There is no dispute that all of Trinity's alleged conduct—promoting a competing product,

inflating retail prices, and failing to report details about sales practices—occurred in Israel. At best, Synopsys and Black Duck would argue that the negotiation and formation of the contract underlies their claims for breach of contract, but as shown above, there were no contacts between Trinity and Massachusetts in connection with the negotiation of the International Reseller Agreement. The undisputed fact that Trinity made the first contact with Black Duck via LinkedIn, presumably communicating with the company in Massachusetts, does not change the analysis, because in light of the actual negotiating history of the contract, the first communication, even if it landed in Massachusetts, did so only incidentally. *See Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 112-13 (1st Cir. 1997) ("The 'transacting business test' under section 3(a) is designed to identify deliberate, as distinguished from fortuitous, contacts with the forum by the nonresident party"). In short, Synopsys and Black Duck cannot prove the causation necessary to succeed under § 3(a) of the long-arm statute.

    3.    <u>Trinity Lacks The Necessary Minimum Contacts with Massachusetts.</u>

Synopsys and Black Duck fail to show jurisdiction under the long-arm statute, but they also cannot show that the exercise of jurisdiction would satisfy the Due Process Clause. Here, the Court applies a three-part test:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089 (1st Cir. 1992). We focus here on purposeful availment. The "key focal points" for purposeful availment "are the voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling subject to Massachusetts's jurisdiction." *Copia Comms.,*

12

*LLC*, 812 F.3d at 5 (internal citation and quotation marks omitted). "[W]here remote communications establish the predicate for the minimum contacts, [the First Circuit has held that the purposeful availment analysis] turns on three factors: 'the defendant's in-forum solicitation of the plaintiff's services, the defendant's anticipation of the plaintiff's in-forum services, and the plaintiff's actual performance of extensive in-forum services.'" *Dillon Boiler Servs., Co. v. Soundview Vt. Holdings, LLC*, 392 F. Supp. 3d 187, 191 (D. Mass. 2019) (quoting *Copia Comms., LLC*, 812 F.3d at 6); *see also PREP Tours, Inc. v. Am. Youth Soccer Org.*, 913 F.3d 11, 20 (1st Cir. 2019).

Synopsys and Black Duck cannot meet this test. Trinity did make initial contact with Black Duck on LinkedIn, and the communication may well have gone to Black Duck's headquarters in Massachusetts (there is, though, no evidence on that point at this stage).[12] But through these few remote communications, Trinity "sought no privilege to conduct any activities in Massachusetts and did nothing to invoke the benefits and protections of Massachusetts's laws beyond implicitly relying on the state's laws in the way that any party to a contract relies on the laws of the jurisdiction in which his counter-party happens to reside." *Copia*, 812 F.3d at 5 (internal citation omitted). Black Duck's communications from Massachusetts to Israel were largely its own unilateral activity—not Trinity's intentional conduct. For example, Trinity worked exclusively with Black Duck representatives in Europe on support and engineering matters except for a few instances where the European team was unavailable and *Black Duck* chose to reroute Trinity's questions to representatives in Massachusetts.

---

[12] While it is at least conceivable that the initial communication is material to the purposeful availment calculus as to Black Duck, it is irrelevant to Synopsys's claims. Synopsys had not yet acquired Black Duck at the time that Trinity and Black Duck made contact and negotiated the International Reseller Agreement. Black Duck's negotiations cannot be imputed to Synopsys. *Dillon*, 392 F. Supp. 3d at 191-92.

As to the remaining factors, none of the parties anticipated or performed any services in Massachusetts. Trinity's work pursuant to the International Reseller Agreement occurred exclusively in Israel—it resold the product to Israeli customers only, and both of its employees worked out of home offices in Israel. *Id*. at 6 (finding no specific jurisdiction where defendant "had no relevant contact with Massachusetts beyond the insubstantial contacts that anyone would have when buying goods and services from a company that itself happens to be in Massachusetts"). Black Duck representatives in Europe communicated primarily with Trinity. Any communications between Trinity and Black Duck representatives in Massachusetts were incidental. For these reasons, the plaintiffs cannot meet the purposeful availment test, and the Court could not exercise jurisdiction even if jurisdiction were proper under the long-arm statute.

## CONCLUSION

For these reasons, the Court should dismiss the action for lack of personal jurisdiction.

Respectfully submitted,

TRINITY SOFTWARE & BEYOND, LTD.

By its attorneys:

*/s/ Christina N. Lindberg*
Theodore J. Folkman (BBO No. 647642)
Christina N. Lindberg (BBO No. 690443)
PIERCE BAINBRIDGE BECK PRICE & HECHT, LLP
One Liberty Square, 13th Floor
Boston, Mass. 02109
Tel: (617) 313-7401
tfolkman@piercebainbridge.com
clindberg@piercebainbridge.com

Dated: October 21, 2019